UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


HOWARD W. HARDY,          :
                     :
       Petitioner      :
                     :
     v.               :  CIVIL NO. 3:CV-08-0830
                     :
R. MARTINEZ,           :  (Judge Kosik)
                     :
       Respondent    :


**M E M O R A N D U M**

## I.    Introduction

      Howard W. Hardy files this petition for writ of habeas corpus pursuant to 28

U.S.C. § 2241 claiming his due process rights were violated with regard to three

separate disciplinary actions against him while housed at the Allenwood Federal

Correctional Institution (FCI-Allenwood).  Hardy is currently confined at the United

States Penitentiary at Allenwood (USP-Allenwood), Pennsylvania.  Named as

Respondent is R. Martinez, Warden of USP-Allenwood.  In the petition Hardy

specifically raises the following three claims with regard to the disciplinary actions:

(1) the Unit Discipline Committee ("UDC") and the Discipline Hearing Officer

("DHO") did not have authority to conduct the hearings on the three disciplinary

charges because three sections of the incident reports were left blank[1]; (2) he was

unable to attend the hearings for the three disciplinary actions because he had been

moved to the Allenwood Low Security Correctional Institution ("LSCI-Allenwood")

at the time of the hearings; and (3) he did not timely receive copies of the DHO's

reports regarding the three hearings that were conducted.  As a result of the three

disciplinary actions, Petitioner's sanctions included a loss of a total of 210 days of

statutory good conduct time credit toward his federal sentence.  In the petition, he

seeks to have the incident reports expunged, the imposed sanctions lifted, and the lost

GCT credit restored.

A response to the petition was filed on June 5, 2008.  (Doc. 9.)  On June 12,

Petitioner's motion to amend the petition to supplement was granted, and Respondent

provided with additional time to supplement the response previously submitted.

(Doc. 12.)  No supplement has been submitted.  Petitioner filed a traverse to the

response on June 16, 2008. (Doc. 13.)  The petition is ripe for consideration and, for

the reasons that follow, will be denied.

## II.   **Factual Background**

Petitioner is serving a 37-year term of imprisonment for the offenses of rape

while armed and attempted rape.  His sentence is to be followed by a consecutive 33-

---

[1]  The three sections were where the investigating lieutenant should sign and
indicate the date and time when copies of the incident reports were delivered to him.
(Doc. 1, Pet. at 2-3.)

month term of imprisonment for prisoner in possession of heroin.  (Doc. 9, Ex. 1,

McCluskey Decl., ¶ 4; Ex. 2, BOP SENTRY Report at 3-6.)  Petitioner arrived at

FCI-Allenwood on May 30, 2007, and was transferred to the Low Security

Correctional Institution at Allenwood on December 18, 2007.  On January 2, 2008, he

was transferred to USP-Allenwood, where he is currently confined.

Petitioner raises due process challenges to three separate incident reports that

were issued against him.  The facts with regard to each of these follow.

### A.     Incident #1 - December 5, 2007

On December 5, 2007, Senior Officer Specialist S. Parker responded to a

duress alarm activated by Petitioner in the Special Housing Unit ("SHU") at FCI-

Allenwood.  (Doc. 9, Ex. 3, Incident Report No. 1674929 at 1; Ex. 12, DHO Report at

2.)  When Parker did not initially meet Petitioner's demand for a blanket, Petitioner

stated "You are an Anglo-Saxon cracker mother****er, and you can keep your

mother****ing blanket." Id.  Petitioner then stated that when he got out of the SHU,

he was going to rape Parker's wife, also an employee at FCI-Allenwood.

On December 6, 2007, Parker wrote an incident report (No. 1674929) charging

Petitioner with conduct which disrupts and interferes with the security or orderly

running of a BOP facility, most like threatening bodily harm, violation of Code 299,

as well as insolence toward a staff member, violation of Code 313. The same day, at

approximately 1:45 p.m., Lieutenant J. Marr, the officer who investigated the

3

incident, delivered the Incident Report to Petitioner. (Doc. 9, Ex. 3 at 1,2.) Marr had

interviewed Petitioner during the investigation and noted that he had advised

Petitioner of his rights to remain silent, that Petitioner made no comment, did not

request witnesses and had a "fair" attitude. (Id. at 2.)

An initial hearing with regard to this incident report was conducted by the

UDC on December 9, 2007. The record notes that Petitioner declined to appear and

refused to sign a Waiver of Appearance form. (Id., Ex. 4, Waiver of Appearance.)

The UDC referred the case to the DHO for further hearing in that the sanctions for the

charged offenses were not available at the UDC level.

On the same date Petitioner received notice of the DHO hearing and was

advised of his rights with regard to the hearing. (Id., Ex. 5.) It is noted that Petitioner

declined to appear before the DHO and refused to sign the notice. (Id. at 1,2.) The

hearing was thereafter conducted on December 18, 2007. (Id., Ex. 6, DHO Report.)

The DHO report reveals that Petitioner did not admit or deny the charges, since he

had refused to appear at the hearing. (Id.)

The report set forth the documentary evidence considered by the DHO which

included (1) the incident report, which included the reporting officer's description of

the events and (2) a Memorandum written by Senior Officer C. O'Conners dated

4

December 6, 2007, which corroborated the evidence contained in the incident report.[2]

Based on all of the evidence, the DHO found the charges to be substantiated and concluded that the greater weight of the evidence supported the finding that Petitioner had committed the acts as charged.  In reaching this conclusion, the DHO emphasized the credibility of the officers in that there was no benefit to be gained by them for providing false information, as well as Petitioner's failure to attend the hearing and provide testimony or evidence to counter the allegations against him.

Among the sanctions imposed for the Code 299 offense was 30 days of disciplinary segregation; the loss of 60 days of statutory good time, the loss of visitation and telephone privileges for a period of time and a disciplinary transfer. For the Code 312 violation, Petitioner lost 30 days of statutory good time and received 15 days of disciplinary segregation.[3]  A copy of the DHO report was provided to Petitioner on January 4, 2008, and advised Petitioner of the DHO's findings and his right to appeal.

**B.     Incident #2 - December 5, 2007**

Later the same day that the earlier incident occurred, Officer Parker responded

---

[2] O'Conners detailed the exchange he overheard between Parker and Petitioner on December 5, 2007, which was consistent with what Parker had set forth in the incident report.

[3] The DHO set forth numerous reasons for the sanctions imposed which included Petitioner's lack of respect for authority, his hampering of the ability of the staff members to perform their duties and Petitioner's propensity for violent acts demonstrated by his threat to another.

to another duress alarm initiated by Petitioner. (Doc. 9, Ex. 7, Incident Report 1674932 at 1; Ex. 10, DHO Report at 2.) Petitioner informed Parker that he wanted a blanket. Parker told him that he would check to see if he was allowed a blanket during a hunger strike, and ordered him not to push the duress button unless it was a medical emergency. Petitioner ignored Parker's order and proceeded to press the duress alarm repeatedly. He threatened to continue his actions until Parker brought a blanket to him.

The following day, Parker prepared an incident report (No. 1674932) charging Petitioner with refusing to obey an order, in violation of Code 307, and using equipment contrary to instructions or posted safety standards, in violation of Code 319. (Id.) Later that afternoon, Lieutenant Marr, the investigating officer, delivered the incident report to Petitioner. He interviewed Petitioner and advised him of his right to remain silent. He noted that Petitioner made no comment and requested no witnesses.

On December 9, 2007, a hearing with regard to incident report No. 1674932 was conducted before the UDC. (Id., Ex. 7.) Petitioner declined to appear and refused to sign a waiver form. (Id., Ex. 8.) The UDC referred the case to the DHO for further hearing. On the same date Petitioner received a notice of the DHO hearing and was advised of his rights pertaining thereto. (Id., Ex. 9.) The DHO hearing was thereafter conducted on December 18, 2007, with Petitioner refusing to appear. (Id,

Ex. 10, DHO report.)

The evidence considered by the DHO in making a determination as to whether Petitioner committed the charged offenses included the incident report and investigation, including the reporting officer's description of the events.  The DHO noted that staff derived no benefit by providing false information, and determined that Petitioner knowingly refused an order to cease activating the duress button unless he was experiencing a medical emergency.  Petitioner's refusal to appear at the hearing, provide evidence or dispute the allegations was also noted. (Id.)  The DHO found the charges to be substantiated, and concluded that the greater weight of the evidence supported the finding that Petitioner had committed the acts as charged. (Id. at 3.)

The sanctions imposed by the DHO with regard to Incident No. 1674932 for the Code 307 violation were 15 days of disciplinary segregation and the loss of 30 days of statutory good time.  With regard to the Code 319 violation, Petitioner also received 15 days of disciplinary segregation and the loss of 30 days of statutory good time.  (Id.) All sanctions were ordered to be served consecutive to the sanctions previously imposed.  In support of the sanctions imposed, the DHO cited reasons of deterrence, noting Petitioner's refusal to obey a staff member's order as impairing the staff member's ability to perform his duties and creating chaos.  It was further emphasized that activating the duress alarm for inappropriate reasons threatened the security and orderly operation of the institution.  On January 4, 2008, Petitioner was

7

provided with a copy of the DHO report, advising him of the findings made at the hearing and his right to appeal.

### C.    Incident #3 - December 6, 2007

On December 6, 2007, the day following the two earlier incidents, Senior Officer N. Carper went to Petitioner's cell to take him to speak with the Captain. (Doc. 9, Ex. 11 at 1; Ex. 14, Incident Report No. 1674931.) Carper conducted a cell search at that time and noticed Petitioner's mattress was ripped on the seams at one end approximately three feet in length. (Id.)  Carper noted that when Petitioner was admitted to the SHU on December 4, 2007, he was issued a mattress with no rips.

On the same day, Carper prepared an incident report charging Petitioner with destroying, altering or damaging property valued in excess of $100.00, a Code 218 violation.  (Id.)  Later the same day, investigating officer Lieutenant Marr delivered the incident report to Petitioner.  (Id., Ex. 11 at 1-2.) As with the other two incident reports, Marr interviewed Petitioner and advised him of his rights.  Petitioner made no comment and requested no witnesses.  (Id. at 2.)

An initial hearing before the UDC was conducted with regard to this incident on December 9, 2007.  (Id. at 1.)  The record noted that Petitioner declined to appear and refused to sign a Waiver of Appearance form.  (Doc. 9, Ex. 12.)  The UDC referred the case to the DHO for further hearing.

A notice of a DHO hearing was provided to Petitioner on December 9, 2007,

and he was advised of his rights with regard to the hearing.  (Id., Ex. 13.)  The record

notes that Petitioner declined to appear before the DHO and refused to sign the

notice.  (Id.)   The hearing was thereafter conducted on December 18, 2007.  (Id., Ex.

14, DHO Report.)  It was noted that Petitioner was not present to admit or deny the

charges as he had refused to appear.

The Disciplinary Hearing Report noted the evidence considered by the DHO

which included: (1) the incident report containing the reporting officer's statement

that Petitioner had been issued an undamaged mattress; (2) the investigation

conducted by Marr; and (3) a Memorandum dated December 7, 2007, issued by

Kathie Hooper, which corroborated the evidence cited in the incident report and

stating that the replacement cost of the mattress was $126.00.  (Id. at 3.)

The charges were found to be substantiated, and the DHO concluded that the

greater weight of the evidence supported the finding that Petitioner had committed

the prohibited acts as charged.  Petitioner was sanctioned to 30 days of disciplinary

segregation, the loss of 60 days of statutory good time, loss of commissary privileges

for 6 months and restitution in the amount of $126.00.  All sanctions were to be

served consecutive to like sanctions previously imposed.  (Id. at 3.)  Petitioner was

provided with a copy of the DHO report on January 4, 2008.

## III.   Discussion

### A.    Applicable Legal Standard

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law.  <u>Torres v. Fauver</u>, 292 F.3d 141 (3d Cir. 2002).  It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time.  <u>Id</u>.  Since Petitioner's sanctions with regard to the three disciplinary proceedings did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In <u>Wolff</u>, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  <u>Wolff</u>, 418 U.S. at 563-67.

The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could

support the conclusion reached by the disciplinary board." <u>Superintendent v. Hill</u>,

472 U.S. 445-46 (1985); <u>see</u> <u>also</u> <u>Griffin v. Spratt</u>, 969 F.2d 16, 19 (3d Cir. 1992).

Pursuant to <u>Hill</u>, if there is "some evidence" to support the decision of the hearing

examiner, the court must reject any evidentiary challenges by the plaintiff.  <u>Hill</u>, 472

U.S. at 457. After <u>Hill</u> was decided, the Third Circuit Court of Appeals indicated in

<u>Henderson v. Carlson</u>, 812 F.2d 874, 879 (3d Cir. 1987), that the standard to be

applied in determining the sufficiency of the evidence was the one found in 28 C.F.R.

§ 541.17(f) - - a "substantial evidence" test.  Subsequent to the <u>Henderson</u> opinion,

the BOP amended its regulation to be more like the <u>Hill</u> holding - - requiring only that

the DHO's decision be based upon at least some facts and, if there was conflicting

evidence, to be "based on the greater weight of the evidence."  <u>See</u> 28 C.F.R.

§ 541.17(f).

## B.    Analysis

In filing the instant petition Hardy raises three due process challenges to the

disciplinary hearing proceedings he was provided.  He first maintains that on each of

the three Incident Reports he was issued, the sections for the date, time and signature

of the staff who delivered the reports to him were left blank, thereby denying him due

process.  Petitioner submits copies of the three reports with the blank sections and

argues that based upon the incomplete reports, the UDC and DHO lacked authority to

hold hearings on the incident charges.  However, even if the reports submitted as

11

exhibits are unaltered copies, BOP records reveal Petitioner did receive copies of the three reports and hearing notices well in advance of 24 hours prior to the DHO hearings. The records show that said sections were completed and signed by Lieutenant Marr, indicating that he delivered the reports to Petitioner on December 6, 2007. Marr's investigative reports also document that he spoke with Petitioner on December 6, 2007, about each of the incidents when he delivered the reports to him, and that as required by regulations, noted the date and time Petitioner received a copy of each incident report. He further read the charges to Petitioner and asked for a statement concerning each incident.

While Petitioner disputes that any lieutenant delivered the reports to him, he concedes that on December 9, 2007, former case manager Mr. Wenner presented him with the three incident reports. The documentary evidence also reveals that Petitioner received a Notice of Disciplinary Hearing form for each of the three disciplinary actions on December 9, 2007, thus advising him in writing of the charges against him. Accordingly, Petitioner's contention that he was not provided with written notice of the charged misconducts at least 24 hours before the DHO hearings on December 18, 2007, is without merit.

Petitioner's next due process challenge is that he did not receive the DHO's written decisions within ten (10) days of the DHO hearings. This claim is totally without merit. 28 C.F.R. § 541.17(g) provides that "the DHO shall give the inmate a

written copy of the decisions and disposition, ordinarily within 10 days of the *DHO's decision,*" not within 10 days of the DHO hearing.  (Id.)(emphasis added.)  The DHO is not required by the regulation to issue a decision within 10 days of the hearing. The record in this case reveals that the DHO issued his decisions on January 4, 2008, and sent the decisions to Petitioner on the same date.

Petitioner's third challenge is that he could not appear at the DHO hearings on December 18, 2007, because the hearings were held at FCI-Allenwood, and he was at LSCI-Allenwood on that date.  He claims that because he was moved to a different prison, this prevented his attendance at the hearings, thereby denying him due process.  Petitioner's claim is not supported by the record for the following reasons. Documents submitted by Respondent reveal that the three DHO hearings were conducted on December 18, 2007 at 9:05 a.m., 9:10 a.m. and 9:20 a.m. (Doc. 9, Exs. 6, 10 and 14.)  The documents submitted further reveal that Petitioner was not moved to LSCI-Allenwood on said date until 12:15 p.m., well after the three hearings concluded.  (Id., Ex. 2.)  Clearly, Petitioner had the ability to attend the hearings.  His presence at FCI-Allenwood along with other evidence in the record that Petitioner refused to sign Waivers of Appearance and Notices of the DHO hearings, clearly indicate that he choose not to participate in the hearings.

In addition, the record clearly demonstrates that the DHO met the evidentiary standard in finding that Petitioner had committed the acts as charged in the incident,

regardless of whether the "some evidence" standard or the "greater weight of the evidence" standard is applied.  Each of the DHO reports fully sets forth the specific evidence relied upon to support the DHO findings, and a conclusion that the greater weight of the evidence supported a determination that Petitioner had committed the violations.  Accordingly, the petition will be denied.  An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

HOWARD W. HARDY,                    :
                                    :
            Petitioner              :
                                    :
      v.                            :   CIVIL NO. 3:CV-08-830
                                    :
R. MARTINEZ,                        :   (Judge Kosik)
                                    :
            Respondent              :

## O R D E R

_____**AND NOW, THIS 30th DAY OF JUNE, 2008**, in accordance with the

accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

    1.    The petition for writ of habeas corpus is **denied**.

    2.    The Clerk of Court is directed to **close this case**.

*s/EDWIN M. KOSIK*
United States District Judge